IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | NO. 3:98-cr-00038 |
| v. | ) | NO. 3:99-cr-00146 |
| | ) | |
| | ) | JUDGE RICHARDSON |
| LAMEISHA ANDERSON | ) | |

## MEMORANDUM OPINION

Pending before the Court is Defendant's Motion for Compassionate Release (Doc. No. 4186).[1] Via the Motion, Defendant seeks a reduction of her 288-month sentence and immediate release from the custody of the Bureau of Prisons ("BOP"), pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Like many other federal inmates in this district and around the country, Defendant claims that the ongoing COVID-19 pandemic, as applied to her specific health profile, satisfies the requirement of "extraordinary and compelling reasons" necessary for this Court to grant "compassionate release" under Section 3582(c)(1)(A)(i), and that compassionate release is otherwise appropriate in her case. The Government has filed a response, (Doc. No. 4198, "Response"), wherein it concedes that Defendant has shown as required "extraordinary and compelling reasons" for compassionate release. Nevertheless, the Government argues that the Motion should be denied because (1) Defendant has not demonstrated that she is not a danger to the safety of other persons, and (2) the 18 U.S.C. § 3553(a) factors weigh in favor of denying the Motion.

---

[1] Defendant filed identical motions in Case No. 3:99-cr-00146 (Doc. No. 50) and Case No. 3:98-cr-00038 (Doc. No. 4108), and this Memorandum Opinion and order in therefore dual captioned. The citations to docket numbers throughout this Memorandum Opinion and Order will be to the docket in Case No. 3:98-cr-00038.

BACKGROUND

Defendant was the girlfriend of Jamal Shakir, the violent leader of a large Los Angeles-based drug conspiracy that operated in Tennessee, as well as other states, from 1992 through 1997. *See United States v. Anderson*, 795 F.3d 613, 614 (6th Cir. 2015). Defendant was an active participant in the conspiracy for approximately three years, wherein Defendant acted as a manager of the conspiracy, and participated in multiple violent kidnappings and at least one murder. (*Id.*; Presentence Investigation Report at 9-15). Defendant's participation in the conspiracy ended when she was arrested in September 1997. *See Anderson*, 795 F.3d at 614.

Defendant pled guilty to one count of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846, and one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). *Id*. On June 4, 2014, District Judge John Nixon sentenced Defendant to 288 months' imprisonment (24 years) on the drug conspiracy charge, and 240 months on the money laundering conspiracy, to be served concurrently. (Doc. No. 4072). According to BOP, Defendant's release date is approximately five months away, on March 20, 2021. *See Federal Inmate Locator*, Bureau of Prisons, https://www.bop.gov/inmateloc/ (last accessed October 15, 2020).

LEGAL STANDARDS FOR "COMPASSIONATE RELEASE"

Under 18 U.S.C. § 3582(c)(1)(A), as modified by the Section 603(b)(1) First Step Act of 2018, P.L. 115-391, 132 Stat. 5239,[2] the district court may under certain circumstances grant a

---

[2] That paragraph of Section 603 provides:

(b) INCREASING THE USE AND TRANSPARENCY OF COMPASSIONATE RELEASE.—Section 3582 of title 18, United States Code, is amended—
    (1) in subsection (c)(1)(A), in the matter preceding clause (i), by inserting after ''Bureau of Prisons,'' the following: ''or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . .''

defendant's motion for compassionate release if what the Court will call the "exhaustion requirements" have been satisfied—*i.e.*, "[either] the defendant has fully exhausted all administrative rights to appeal a failure of [BOP] to bring a motion [for compassionate release] on the defendant's behalf or [there has been a] lapse of 30 days since the receipt of such a request [for BOP to file such a motion] by the warden of the defendant's facility, whichever is earlier."

Once it properly can act on a motion brought under 18 U.S.C. § 3582(c)(1)(A), the district court can reduce a sentence under that provision (for any defendant younger than 70 years old)[3] only if it finds extraordinary and compelling reasons to do so. *See* 18 U.S.C. § 3582(c)(1)(A)(i). The defendant bears the burden of showing that "extraordinary and compelling reasons" exist to justify release under the statute. *United States v. Hayward*, No. CR 17-20515, 2020 WL 3265358, at *1 (E.D. Mich. June 17, 2020). And the Court does not write on a clean slate in considering what qualifies as "extraordinary and compelling reasons."

Congress tasked the Sentencing Commission with promulgating "general policy statements regarding . . . the appropriate use of . . . the sentence modification provisions set forth in [section] 3582(c) of title 18. . . ." 28 U.S.C. § 994(a)(2)(C). Congress directed the Sentencing Commission, in promulgating these policy statements, to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). In response to these congressional instructions, the Sentencing Commission promulgated U.S.S.G. § 1B1.13, and its application note, which collectively comprise the policy statement(s).

Practitioners of federal criminal law are accustomed to treating the Sentencing

---

[3] This subparagraph provides an alternative ground for relief for defendants who are at least 70 years of age. *See* 18 U.S.C. § 3582(c)(1)(A). It is inapplicable here, however, because Defendant is only 47.

Commission's policy statements as advisory only (especially in the aftermath of *United States v. Booker*, 543 U.S. 220 (2005)). They are exactly that in the context of a defendant's original sentencing—but not in the context of a motion under Section 3582(c)(1)(A). In the latter context, they are by statute mandatory, inasmuch as Congress has prohibited courts from granting a sentencing reduction unless "such a reduction is consistent with applicable policy statements issued by" the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A).[4]

Together, U.S.S.G. § 1B1.13 and its application note do two things that are relevant here. First, they define, in Application Note 1, "extraordinary and compelling circumstances" to apply in (and only in) situations falling within one or more of five separate and particular categories, which the Court discusses below. *See* U.S.S.G. § 1B1.13 n.1(A)(i)-(ii), (B), (C) & (D).[5] Second, they prescribe additional requirements for obtaining a sentence reduction where the defendant does meet the threshold requirement of "extraordinary and compelling circumstances."[6] Specifically, for a defendant not yet 70 years old (such as Defendant), the court may reduce a sentence if (1) extraordinary and compelling reasons warrant a reduction, *and* (2) the defendant is not a danger to the safety of any other person or to the community, *and* (3) the reduction is consistent with the policy statement. *See* U.S.S.G. § 1B1.13(1)(A), (2) and (3). The Application Note indicates the

---

[4] In *Booker*, the Supreme Court found unconstitutional (*i.e.*, violative of the Sixth Amendment) Congress's directive that the Sentencing Guidelines are generally what was referred to as "mandatory," meaning that sentence generally had to be imposed within the guideline range calculated using the Sentencing Guidelines. To say the least, this limited Congress's ability to make anything about the Sentencing Guidelines mandatory in the context of an original sentencing. But such limitations do not exists in the context of a motion for sentence reduction under Section 3582(c)(1)(A), wherein the Sixth Amendment concerns driving the *Booker* decision are entirely absent.

[5] The Application Note also contains various other instructions for considering whether extraordinary and compelling circumstances exist. Such instructions need not be discussed here, as the Court herein resolves the Motion without any need to refer to them.

[6] It is important to note that these other requirements—being, after all, *requirements*—are mandatory. That is to say, a defendant is *not* eligible for compassionate release merely because there are "extraordinary and compelling reasons" within the meaning of Application Note 1(A).

third requirement may be redundant of the first two, inasmuch as it states that "any reduction made . . . for the reasons set forth in subdivisions (1) and (2) [*i.e.*, U.S.S.G. § 1B1.13(1) & (2)] is consistent with this policy statement." *Id.* at n.5.[7]

If the court does find these (two or three depending on how one looks at it) requirements satisfied, the defendant has met the basic eligibility for compassionate release. But even then, the Court does not automatically or necessarily grant the motion for a reduction; instead, it *may*, after considering the factors set forth in 18 U.S.C. § 3553(a), reduce the term of imprisonment (and may impose a term of probation or supervised release that does not exceed the unserved portion of the original term of imprisonment). *See* 18 U.S.C. § 3582(c)(1)(A).

The (familiar) sentencing factors set forth in Section 3553(a) include:

>  (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> 
> (2) the need for the sentence imposed—
>  (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>  (B) to afford adequate deterrence to criminal conduct;
>  (C) to protect the public from further crimes of the defendant; and
>  (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> 
> (3) the kinds of sentences available;
> 
> (4) the kinds of sentence and the sentencing range established for—
>  (A) the applicable category of offense committed by the applicable category of defendant as set forth in the . . .
>  i) [United States Sentencing Guidelines, ("U.S.S.G.")]—
>  ii) [in effect at the time of sentencing]

---

[7] Like many redundancies, this one may seem odd due to its apparent unnecessariness. But it seems motivated by the valid desire to ensure that the Sentencing Commission's criteria for a sentencing reduction expressly both: (a) included the congressional requirement, discussed below, that any reduction be "consistent with applicable policy statements issued by" the Sentencing Commission; and (b) clarified that the required consistency involved nothing more than satisfaction of U.S.S.G. § 1B1.13(1) & (2).

(5) any pertinent policy statement—
   A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code; and
   B) [and in effect at the time of sentencing]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Relevant to factor number (5), as discussed above, the Sentencing Commission has issued a binding policy statement regarding reduction of a term of imprisonment under Section 3582(c)(1)(A). *See* U.S.S.G. § 1B1.13. As further mentioned above, Application Note 1 to U.S.S.G. § 1B1.13 speaks to what constitutes "extraordinary and compelling reasons," identifying five categories of situations where such reasons may be found to exist. Two of the five involve the defendant's medical condition, *i.e.*: (i) the defendant is suffering from a terminal illness; or (ii) the defendant is suffering from a serious physical or medical condition, or serious functional or cognitive impairment, or deteriorating physical or mental health due to the ageing process, that substantially diminishes the defendant's ability to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover. *See* U.S.S.G. § 1B1.13 n.1(A). The next two categories relate to defendants over 65 and defendants with particular grave family circumstances, respectively; they are not applicable to the instant Motion.

As for the last of the five categories (sometimes referred to as the "residual" or "catchall" provision), the Application Note describes it as encompassing the situation where, *"[a]s determined by the Director of the Bureau of Prisons,* there exists in the defendant's case an extraordinary and compelling reason *other* than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 n.1(D).

## THE PARTIES' RESPECTIVE POSITIONS

In the Motion, Defendant relies on the prevailing COVID-19 pandemic and her medical conditions—chronic obstructive pulmonary disease ("COPD"), asthma, hypertension, and chronic sinusitis. (Doc. No. 4186 at 4). Defendant contends that these medical conditions "under the spectre of COVID-19 . . . constitute an extraordinary and compelling reason to reduce her sentence" under Application Note 1(A)(ii)(I). (Doc. No. 4186 at 10).[8] Defendant further argues that the Section 3553(a) factors weigh in favor of granting her release, because her time served (approximately 95% of her sentence) reflects the seriousness of her offenses, will adequately serve the need for deterrence, and "will serve the purposes of further promoting her rehabilitation safer from the dangers of COVID-19." (*Id.* at 14-15). Additionally, Defendant argues that "there is no

---

[8] Defendant alternatively argues that the Court should grant her Motion pursuant to Application Note 1(D). (Doc. No. 4186 at 12). The Court rejects such invitation because the Court may not base a finding of extraordinary and compelling reasons on Application Note 1(D) under the circumstances present here. As the undersigned has previously explained:

> As for the last of the five categories (sometimes referred to as the "catchall" category) the Application Note describes it as encompassing the situation where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 cmt. n.1(D) (emphasis added). The italicized language raises an issue that has divided the courts: does a district court have the authority to grant compassionate release under the catchall provision based on "other" extraordinary and compelling reasons—i.e., extraordinary and compelling reasons existing in the defendant-movant's case that are not within the scope of U.S.S.G. § 1B1.13 Application Note 1(A), 1(B), or 1(C)—not advanced (or "determined," as the catchall provision puts it) by the Director of BOP? The undersigned previously has taken a position on this issue, answering the question in the negative. *See United States v. Medlin*, Case No. 3:09-cr-00204-1, Doc. No. 105 (M.D. Tenn. May 7, 2020). The question remains a debatable one, but the Court adheres to its prior ruling, holding that where (as here) the Director of BOP has not determined that any such "other" reasons exist in the defendant's case, compassionate release for that defendant can not be predicated on "other" extraordinary and compelling reasons under the catchall provision.

*United States v. Montgomery*, No. 3:15-CR-00184, 2020 WL 3642496, at *4 (M.D. Tenn. July 6, 2020). *See also, e.g., United States v. Justice*, No. CR 7:18-01-KKC, 2020 WL 5549157, at *2 (E.D. Ky. Sept. 16, 2020) (stating that "[t]hese 'other reasons' may only be 'determined by the Director of the Bureau of Prisons'" and thus the court "has no authority to find 'other reasons' that may justify a sentence reduction"). The undersigned realizes that other district judges have come out the other way on this issue, but he adheres to his above-stated views for the reasons set forth in *Medlin*.

need to protect the public from 'further crimes'" of Defendant because she has been continuously incarcerated since 1997, and therefore, is far removed from her criminal past. (*Id*. at 14).

In its Response, the Government concedes that Defendant has shown extraordinary and compelling reasons for release based on her medical conditions combined with the COVID-19 pandemic. (Doc. No. 4198 at 7-8). Nevertheless, the Government argues that Defendant's Motion should be denied. First, the Government argues that Defendant has not met her burden to demonstrate that she has exhausted her administrative remedies because she has only "asserted" that she has done so and has not offered any proof that she actually submitted a request for compassionate release to the warden of FCI Dublin. (*Id*. at 7-11). Next, the Government argues that Defendant's Motion should be denied even if the Court finds that Defendant's administrative remedies are exhausted, because (1) Defendant has not shown that she would not be a danger to other persons or the community if she were released; and (2) the Section 3553(a) factors militate against granting such relief—particularly due to the nature and circumstances of the underlying offenses, and various disciplinary infractions Defendant has received while incarcerated. (*Id*. at 13).

## ANALYSIS

### I. EXHAUSTION OF ADMINISTRATIVE REMEDIES

As an initial matter, the Court will determine whether Defendant has shown that she has exhausted her administrative remedies. In an opinion issued earlier this year, this Court concluded that a district court cannot disregard the exhaustion requirements of 18 U.S.C. § 3582(c)(1)(A)(i). *See United States v. Edwards*, No. 3:13-CR-00012-1, 2020 WL 1987288, at *11 (M.D. Tenn. Apr. 27, 2020). Thereafter, the Sixth Circuit confirmed that a district court may not disregard the exhaustion requirement. *See United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020).

Accordingly, any request for compassionate release to a district court is premature until a "defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A)(i). "The defendant bears the burden of showing he has exhausted his administrative remedies and is entitled to compassionate release." *United States v. Williams*, No. 2:17-cr-20002-5, 2020 WL 2300206, at *3 (W.D. Tenn. May 1, 2020) (citing *United States v. Ebbers*, 432 F. Supp. 3d 421, 426 (S.D.N.Y. 2020)).

As noted above, the Government argues that Defendant has not exhausted her administrative remedies because she has only "asserted" that she made a request for compassionate release to the warden of FCI Dublin, and BOP officials have been unable to locate any such request for relief. (Doc. No. 4198 at 7-11). The Court has previously denied without prejudice motions for compassionate release where the defendants similarly failed to provide evidence of exhaustion of administrative remedies. *See United States v. Crowell*, No. 3:11-cr-00001, Doc. No. 48, (M.D. Tenn. Sept. 29, 2020); *United States v. Thompson*, No. 3:15-cr-00066, Doc. No. 506 (M.D. Tenn. Sept. 23, 2020); *see also United States v. Knox*, No. 3:12-CR-0252-B, 2020 WL 5500230, at *2 (N.D. Tex. Sept. 11, 2020) (finding that the defendant failed to demonstrate that he had exhausted his administrative remedies where he stated in his letter to the court that "he ha[d] exhausted his administrative remedies" because he sent a letter to the warden "on May 20, 2020, over 30 days ago," but the defendant did not attach proof that the warden actually received the defendant's request).

However, the Courts concerns in this case are alleviated by Defendant's Reply (Doc. No. 4209) and a Declaration (Doc. No. 4208) filed contemporaneously therewith. In that declaration,

which the Court fully credits, Defendant's counsel averred that the Government's Response prompted him to submit a request for compassionate release to the warden on Defendant's behalf.). Attached to Defendant's counsel's Declaration was the Federal Express Confirmation that indicated that the request was delivered to FCI Dublin on July 30, 2020. (Doc. No. 4208-1). The Declaration further states that since this request, no response from the warden to the written request for compassionate release has been received. (Doc. No. 4208). Thus, Defendant contends that because more than thirty days have lapsed since delivery of the request to FCI Dublin, Defendant "has fully and finally exhausted her administrative remedies, thereby addressing and overcoming the Government's procedural defense[.]" (Doc. No. 4209 at 2).

The Court agrees that the Reply, supported by the Declaration, meets Defendant's burden to demonstrate that she has in fact exhausted her administrative remedies. Accordingly, the Court may now consider Defendant's Motion on the merits.

## II. EXTRAORDINARY AND COMPELLING REASONS

As noted above, the Government concedes that "extraordinary and compelling reasons" exist for Defendant's compassionate release under the standards set forth by U.S.S.G. § 1B1.13 and its application note.

## III. DANGER TO THE SAFETY OF ANY OTHER PERSON OR THE COMMUNITY

Defendant may be eligible for compassionate release, such that the Court would then proceed to an analysis of the factors under 18 U.S.C. § 3553(a), only if she is not a danger to other persons or the community. *See* U.S.S.G. § 1B1.13. "[T]he defendant has the burden of proof on the issue of his lack of danger to others and the community." *See United States v. Rodriguez*, No. 3:95CR772, 2020 WL 3260711, at *1 (N.D. Ohio June 13, 2020).

The Government argues that Defendant's Motion should be denied because she has failed to demonstrate that she is not a danger to the safety of the community. (Doc. No. 4198 at 9-10). The Government asserts that Defendant does in fact pose such a danger because

> [Defendant's] offense conduct, for which she was sentenced to 24 years' imprisonment, was serious. She conspired to commit a large-scale drug conspiracy spanning the majority of the United States, during which she participated [in] three violent kidnappings, a beating, and a murder. She was a manager and supervisor in the conspiracy, which included supervising juveniles and reporting on their conduct to her violent boyfriend, Shakir.

(*Id*. at 10).

Defendant does not disagree that her offenses were serious. Instead, she argues that she is "far removed from her criminal past" because she has been continuously incarcerated since 1997. (Doc. No. 4186 at 14). Thus, Defendant contends that she does not currently pose a danger to the public. (*Id*.).

The Court agrees with Defendant. By so doing, the Court does not intend to belittle the seriousness of Defendant's prior offense conduct; that conduct was undoubtedly loathsome and extremely dangerous to other persons and the community. However, Defendant participated in that conduct over twenty-three years ago. *See United States v. McMullin*, No. CR 11-20345, 2020 WL 5944466, at *4 (E.D. Mich. Oct. 7, 2020) (noting that the defendant had served 75% of his 15-year sentence and finding that "although [the defendant's] criminal history and the nature and circumstances of his offense make it clear to the Court that he was dangerous at the time of sentencing, the Court finds that he is no longer dangerous today."); *United States v. Wren*, No. 10-CR-20137, 2020 WL 5087978, at *4 (E.D. Mich. Aug. 28, 2020) (nothing that the defendant had a significant criminal history, but concluding that when "[f]actoring in Wren's 111 months of incarceration, the Court does not believe that Wren's level of dangerousness precludes his release."); *United States v. Medlin*, No. 3:09-CR-00204, 2020 WL 4274199, at *5 (M.D. Tenn.

July 24, 2020) (Richardson, J.) (granting compassionate release and finding that the defendant was not a danger to other person or the community because, among other reasons, the "[d]efendant's criminal convictions, though numerous, by now all are in the fairly distant past.").

The Court also notes that Defendant is now much closer to 50 than 40. Although Defendant's advancing age (and everything else, for that matter) cannot possibly guarantee that Defendant will not recidivate, it cuts in Defendant's favor that she is approaching an age associated with ever lower recidivism rates. Although Defendant clearly was a danger to other persons and the community at one time, that does not mean that she is a danger to the community today. And the Court finds that she is not.

Additionally, as will be explained below, the Court will require Defendant to remain on home confinement for what would be the remainder of her sentence. Moreover, family support will be available to Defendant upon release, and the United States Probation Office has represented to the Court that Defendant's aunt, with whom Defendant would reside upon release, appears to be someone who will provide positive support for Defendant. The Court finds these things diminish the risk of Defendant re-offending and mitigate any threat to the community which Defendant may pose.

### IV. SECTION 3553(a) FACTORS

Finally, the Government argues that the Section 3553(a) factors weigh against granting the Motion. The Court will review the relevant factors.

*The nature and circumstances of the offense* cuts against compassionate release. As discussed above, Defendant was a participant in an extensive drug conspiracy which involved not only the trafficking of hundreds of kilograms of cocaine, but also violent acts against several people. However, the weight of this is limited because Defendant (assuming credit for good-time

she currently appears to have served) has served all but five month of a sentence that accounted for the evils of her offenses. And the remaining Section 3553(a) factors do not weigh against granting relief, as discussed below.

*The history and characteristics of the Defendant* cuts somewhat in favor of compassionate release. The Court fully acknowledges that Defendant's criminal history includes several drug-related offenses, and the Government makes a reasonable argument that this history weighs against release. However, like the offense conduct, Defendant's criminal history is comprised of criminal charges incurred well over twenty-years ago. Defendant has also had several recent disciplinary infractions, that the Government also argues cuts against release. On review, however, Defendant's recent disciplinary infractions involve relatively minor conduct, such as refusing a work assignment. Thus, on balance, the Court finds that this factor weighs neither in favor for or against release.

*The need to protect the public from further crimes of the defendant* cuts in favor of compassionate release for the same reasons discussed above in connection with whether Defendant would be a danger if released. This conclusion is bolstered by the fact that denial of the Motion would serve to provide protection in the form of incarceration for only an additional five months (assuming credit for good-time served). Thus, the utility, in terms of protecting the public, of denying the Motion is limited.

*The need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner* cuts in favor of compassionate release, however only slightly. The main issue here is the need for medical care and/or medical countermeasures in connection with COVID-19. The Court cannot say that Defendant is more likely to contract COVID-19, or more likely to experience a bad outcome if she were to contract

COVID-19, if she remains in prison. Additionally, Defendant's medical records indicate that her medical conditions are being well managed within the BOP facility. Nevertheless, prisons are widely reported to be especially prone to COVID-19 outbreaks, and the requirement of home confinement that will be put in place by the Court will aid Defendant in avoiding exposure to COVID-19.

*To reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense* weighs substantially in favor of compassionate release, in the Court's view, because Defendant has served over 95% of her sentence. The Sixth Circuit has explained that "the need to provide just punishment, the need to reflect the seriousness of the offense, and the need to promote respect for the law permit the court to consider the amount of time served in determining whether a sentence modification is appropriate." *United States v. Kincaid*, 802 F. App'x 187, 188–89 (6th Cir. 2020). The minor reduction in Defendant's sentence (of merely five months, assuming credit for good-time served) will not undo the major punishment she has already been subjected to, nor will it eradicate the effects of her original sentence. Further, Defendant will not be released wholly without restriction. Defendant's liberty will still be restrained for the remainder of her sentence by requiring her to remain under home confinement until March 20, 2021—Defendant's projected release date. *See Federal Inmate Locator*, Bureau of Prisons, https://www.bop.gov/inmateloc/ (last accessed October 15, 2020). For the same reasons, and because no appreciable additional deterrence will be provided by an additional five months in prison beyond the decades already served, *the need for the sentence to afford adequate deterrence to criminal conduct*, also weighs in favor of release.

Therefore, the Court finds that on balance the Section 3553(a) factors weigh in favor of granting Defendant compassionate release.

CONCLUSION

Compassionate release is an extraordinary remedy. *See*, *e.g.*, *United States v. Rizzo*, No. CR 16-20732, 2020 WL 2092648, at *3 (E.D. Mich. May 1, 2020). However, the Court finds that such extraordinary remedy is appropriate here. For the reasons stated above, Defendant's Motion for Compassionate Release (Doc. No. 4186) will be **GRANTED**.

Accordingly, the custodial portion of Defendant's sentence will be reduced to time served and she shall be released from custody of the BOP. This Order will be stayed for up to fourteen days to make appropriate travel arrangements and ensure Defendant's safe release. Defendant shall be released as soon as appropriate travel arrangements are made and it is safe for Defendant to travel. There shall be no delay in ensuring travel arrangements are made. If more than fourteen days are needed to make appropriate travel arrangements and ensure Defendant's safe release, then the parties shall immediately notify the Court and show cause why the stay should be extended.

Upon her release, Defendant shall travel directly to the home of her aunt, Quinnie Burks, located at 2789 Meadow Lake Drive East, Memphis, Tennessee. BOP shall ensure that Defendant is COVID-19 negative prior to her release from custody. For the first 14 days after Defendant arrives in Memphis, she shall remain in quarantine within the home of her aunt. Finally, Defendant shall contact her supervising probation officer within 48 hours after she first arrives at her aunt's home.

The Court will impose a special term of supervised release that will begin immediately upon Defendant's release from custody: Defendant shall be subject to home confinement (with electronic monitoring) at the residence of her aunt until March 20, 2021, at which time the special term of supervised release will expire. During that period of home confinement, Defendant shall not leave that residence other than for employment, job training, religious services, medical and/or

mental health appointments, treatment programs, appointments with counsel, and/or other activities approved in advance by his supervising probation officer. She may not leave the residence at all during the 14-day quarantine period. All conditions of the original term of supervision will also be imposed on the special term of supervision.

Upon expiration of the special term of supervised release, Defendant shall begin serving the six years of supervised release that the Court imposed in the Judgment. (*See* Doc. No. 4072). To be clear, the six-year term of supervised release is to run entirely consecutively to the special term of supervised release discussed above.

A corresponding Order on Motion for Sentence Reduction Under 18 U.S.C. §3582(c)(1)(A) shall be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE